## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, PETER ANDREYEV, and WILLIAM SULLIVAN, <br><br> Plaintiffs, <br><br> v. <br><br> INNOVATIVE WEB SOLUTIONS, LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals*, and ABC COMPANIES 1-10, *fictitious names of unknown entities*, <br><br> Defendants. | Case No.: 1:25-cv-01535-HB |

## REPLY BRIEF IN FURTHER SUPPORT OF
## MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................1

FACTUAL BACKGROUND................................................................................2

LEGAL ARGUMENT .........................................................................................4

    A.    Plaintiffs Fail to Demonstrate that IWS Purposefully Availed
           Itself of the State of New Jersey.............................................................4

    B.    Plaintiffs Fail to Demonstrate A Basis for Specific Jurisdiction
           Under the *Calder* Effects Test..............................................................8

          i.    Daniel's Law is Not an Intentional Tort ....................................9

          ii.    Plaintiffs Fail To Establish That IWS "Expressly Aimed" Any
               Alleged Tortious Conduct at New Jersey .................................12

CONCLUSION ..................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atlas Data Priv. Corp. v. We Inform, LLC*,
 758 F. Sup. 3d 322 (D.N.J. 2024) ........................................................9

*Atlas Data Privacy Corp., et al. v. GoHunt, LLC, et al.*,
 Case No. 1:24-cv-04380-HB ...............................................................1

*Atlas Data Privacy Corp. v. LexisNexis Risk*,
 BER-L-000875-24 (Law Div. June 6, 2025) ....................................16

*Blazovic v. Andrich*,
 124 N.J. 90 (1991) .............................................................................10

*Briskin v. Shopify, Inc.*,
 135 F.4th 739 (9th Cir. 2025) .......................................................8, 15

*Burger King Corp. v. Rudzewicz*,
 471 U.S. 462 (1985) ...........................................................................16

*Calder v. Jones*,
 465 U.S. 783 (1984) ...........................................................................13

*Click Go and Buy Inc. v. IT Assets, Inc.*,
 2024 WL 5252474 (D.N.J. Dec. 31, 2024) .......................................15

*Fidrych v. Marriott Int'l, Inc.*,
 952 F.3d 124 (4th Cir. 2020) ...............................................................5

*Food Sci. Corp. v. Nagler*,
 2010 WL 1186203 (D.N.J. Mar. 22, 2010) ....................................7, 15

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
 592 U.S. 351 (2021) .............................................................................4

*Goldfarb v. Kalodimos*,
 539 F. Supp. 3d 435 (E.D. Pa. 2021) ................................................13

*Hasson v. FullStory, Inc.*,
 114 F.4th 181 (3d Cir. 2024) ....................................................*passim*

*Helicopteros Nacionales De Colombia v. Hall*,
　　466 U.S. 408 (1984) ................................................................................ 13

*Hepp v. Facebook*,
　　14 F.4th 204 (3d Cir. 2021) ...................................................................... 5

*Ingrao v. AddShoppers, Inc.*,
　　2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) ........................................ 16

*Johnson v. Griffin*,
　　85 F.4th 429 (6th Cir. 2023) ................................................................... 13

*Kloth v. S. Christian Univ.*,
　　320 F. App'x 113 (3d Cir. 2008) ............................................................... 5

*M.H. on behalf of C.H. v. Omegle.com LLC*,
　　2021 WL 1050234 (D.N.J. Mar. 19, 2021) .............................................. 5

*Marten v. Godwin*,
　　499 F.3d 290 (3d Cir. 2007) ............................................................... 8, 13

*Monturi v. Englewood Hosp.*,
　　246 N.J. Super. 547 (App. Div. 1991) .................................................... 11

*Perna v. Pirozzi*,
　　92 N.J. 446 (1983) .................................................................................. 11

*Remick v. Manfredy*,
　　238 F.3d 248 (3d Cir. 2001) ..................................................................... 8

*Rhodes v. Azeff*,
　　2025 WL 327297 (W.D. Pa. Jan. 29, 2025) ........................................... 16

*Rickman v. BMW of N. Am. LLC*,
　　538 F. Supp. 3d 429 (D.N.J. 2021) ..................................................... 6, 12

*Rockwood Select Asset Fund XI v. Devine, Millimet & Branch*,
　　750 F.3d 1178 (10th Cir. 2014) .............................................................. 11

*Walden v. Fiore*,
　　571 U.S. 277 (2014) ........................................................................ 10, 16

iii

*Wolstenholme v. Bartels*,
    511 F. App'x 215 (3d Cir. 2013)..........................................................................13

**Other Authorities**

Black's Law Dictionary, *Intentional Tort* (12th ed. 2024).......................................9

*Restatement (Second) of Torts* § 8A comment b (1965).........................................10

Defendant Innovative Web Solutions, LLC ("IWS" or "Defendant") respectfully submits this reply brief in further support of its motion to dismiss for lack of personal jurisdiction (ECF No. 15) (the "Motion").[1]

## **INTRODUCTION**

As set forth in the Motion, and despite the limited jurisdictional discovery conducted to date and contrary to the arguments raised in Plaintiffs' Opposition to the Motion (ECF No. 56, the "Opposition"), there is no basis for this court to exercise personal jurisdiction over IWS in New Jersey, whether general or specific. In their Opposition, Plaintiffs argue that jurisdiction is appropriate under the traditional purposeful availment test, claiming that maintaining a website that makes available the information of New Jersey residents and is accessible to New Jersey customers satisfies the test. *See* Opposition at pp. 33-36. Plaintiffs also rely on the *Calder* effects test and argue that the mere possession of New Jersey data in its database is intentional conduct and IWS' receipt of Plaintiffs' purported opt-out requests pursuant to Daniel's Law satisfies the *Calder* test and demonstrates a basis for specific jurisdiction. *See id.* at pp. 36-41.

---

[1] As set forth in IWS' Supplemental Memorandum of Law in Support of the Consolidated Motion to Dismiss Plaintiffs' Complaints for Lack of Personal Jurisdiction (ECF No. 15) and correspondence to the Court dated April 17, 2025 (ECF No. 16), IWS joins the Consolidated Motion to Dismiss and incorporates by reference the arguments raised therein. *See Atlas Data Privacy Corp., et al. v. GoHunt, LLC, et al.*, Case No. 1:24-cv-04380-HB, ECF No. 42.

Plaintiffs' arguments are unavailing, and their attempts to portray IWS' conduct and limited interactions, if any, with New Jersey and its residents misstate the record. For the reasons set forth in the Motion and more fully herein, it is clear that (1) IWS has not purposefully availed itself of New Jersey in any meaningful way; and (2) Plaintiffs fail to allege or demonstrate intentional, targeted tortious conduct required to satisfy the *Calder* effects test. Thus, this Court lacks personal jurisdiction, and the claims against IWS must be dismissed.

## FACTUAL BACKGROUND

In the interests of brevity and judicial economy, IWS respectfully directs this Court to the "Factual Background" Section of its Motion which sets forth the facts which demonstrate a lack of personal jurisdiction over IWS. Plaintiffs' Opposition also self-servingly cherry picks and misstates several points of testimony raised in IWS' corporate witness deposition. IWS is a limited liability company organized under the laws of the State of Minnesota, and its corporate officers and employees are all located in Minnesota. *See* Exhibit A at 30:7-8.[2] IWS does not own or control any companies that have operations in New Jersey. *Id.* at 95:16-21. IWS does not do business with any companies located in New Jersey. *Id.* at 96:6-24. IWS operates and manages National Cellular Directory, which is a people search website where

---

[2] Annexed hereto as **Exhibit "A"** is a full and complete copy of IWS' corporate witness deposition transcript, in contrast to the excerpts provided by Plaintiffs in their Opposition.

users can find contact information.  *Id.* at 29:4-9, 31:13-19, 38:19-39:7, 53:5-54:6. It does not provide any other services.  *Id.* at 32:20-33:3.  The data available through the searches and reports performed on the site is sourced from various data sources. *Id.* at 54:20-55:14.

National Cellular Directory is accessible to users throughout the United States, including in New Jersey.  *See* Exhibit A at 40:14-24, 52:12-18.  The site maintains a record of user activity so that the users can log in and view the search history.  *Id.* at 41:5-21.  The company also has access to the search history as part of its main database and, in response to jurisdictional discovery requests served by Plaintiffs in this action, generated a report of user searches conducted in New Jersey in 2024 and revenue associated with those searches.  *Id.* at 41:22-47:25, 111:5-113:6.  The number of New Jersey users who conducted searches represented 1.5816 percent of the site's total users, and the portion of revenue associated with those searches represented 2.669 percent of IWS' total gross revenue.  *Id.* at 130:3-131:16.

Like many other businesses, IWS conducts advertisement and marketing through Google, Bing, Microsoft and search engine and social media optimization on a nationwide basis.  *See* Exhibit A at 72:11-73:16, 74:8-13, 98:21-100:2. However, it does not specifically target its advertisement(s) and/or marketing to any particular audience.  *Id.* at 73:17-74:7, 110:21-111:4.  National Cellular Directory has an opt out form on its website that allows an individual to immediately request

3

removal of their information. *Id.* at pp. 90:8-91:9. The opt-out request is processed the same regardless of state of residency, though IWS is able to search its records and identify opt-out requests received for individuals who reside in a certain state. *Id.* at 92:3-9, 92:21-93:12. For the reasons set forth more fully below, the services made available by IWS on a nationwide basis are untethered to New Jersey and, contrary to Plaintiffs' arguments, do not provide a basis for personal jurisdiction under the purposeful availment test or the *Calder* effects test.

## **LEGAL ARGUMENT**

### A. **Plaintiffs Fail to Demonstrate that IWS Purposefully Availed Itself of the State of New Jersey**

Plaintiffs' Opposition does nothing to address IWS' argument that it has not purposefully availed itself of New Jersey. Specific jurisdiction exists only where a defendant purposefully directs its activities at the forum and the alleged injuries "arise out of or relate to" those activities. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). In order to establish personal jurisdiction under the purposeful availment test, the relevant question is whether IWS purposely availed itself of the privilege of conducting activities within New Jersey and, specifically, whether IWS has "minimum contacts" with New Jersey to show that IWS "took a deliberate act reaching out to do business" in New Jersey and that "give[s] rise to—or relate[s] to—[Plaintiffs'] claims." *Hasson v. FullStory, Inc.*, 114

4

F.4th 181, 186 (3d Cir. 2024); *see also Hepp v. Facebook*, 14 F.4th 204, 207 (3d Cir. 2021) (internal quotations omitted).

In their Opposition, Plaintiffs claim that IWS maintains New Jersey data, makes its product available to New Jersey customers, and earns revenue from New Jersey customers, identifies those customers through billing audits, and attributes revenue specific to New Jersey, which satisfies the purposeful availment test. *See* Opposition at pp. 33-36. As a matter of law, maintaining data pertaining to New Jersey residents which is thereafter made available as part of a nationwide people search platform does not constitute "deliberate targeting" of the forum, particularly in light of the fact that IWS' corporate witness confirmed that IWS does not target New Jersey in any manner. *See*, *e.g.*, *M.H. on behalf of C.H. v. Omegle.com LLC*, 2021 WL 1050234, at *3 (D.N.J. Mar. 19, 2021) (finding that there was no indication of purposeful direction towards New Jersey by a website that is generally accessible and looks and operates the same for users across the world); *Kloth v. S. Christian Univ.*, 320 F. App'x 113, 116 (3d Cir. 2008) (finding that foreseeability that users from a forum state would access the website is insufficient to establish purposeful availment of the forum state).[3]

---

[3] *See also Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 141–43 (4th Cir. 2020) (finding no purposeful availment where hotel website included a dropdown with South Carolina (and every other state), as it "confirms that the website was accessible to all but targeted at no one in particular").

Plaintiffs also grossly misstate IWS' business and the figures that it provided as part of its responses to jurisdictional discovery in this action. IWS analyzed user searches conducted by customers located in New Jersey and gross revenue associated with those services *for purposes of responding to Plaintiffs' jurisdictional discovery in this matter*—not for any other purpose. *See* Exhibit A at 41:22-47:25, 111:5-113:6, 130:3-131:16. The fact that IWS provides the ability to search contact information of individuals located in New Jersey, as well as every state in the country, does nothing to support the exercise of personal jurisdiction under the purposeful availment test. An encyclopedia company could have several pages with information about Hawaii, but this would not indicate deliberate targeting of Hawaii. In the same way, the fact that IWS maintains contact information for individuals located across the country, including New Jersey, does indicate deliberate targeting of New Jersey. Moreover, the fact that IWS provided search and revenue information for customers in New Jersey *for purposes of responding to Plaintiffs' discovery requests* does nothing to support the exercise of jurisdiction.

It is a basic premise that "general efforts to target a U.S. market do not suffice to demonstrate deliberate targeting of New Jersey in particular." *Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 439 (D.N.J. 2021). Here, the jurisdictional discovery conducted to date supports that IWS does nothing more than generally target a nationwide market, devoid of any specific targeting to New Jersey

whatsoever. Plaintiffs also rely on the fact that IWS earned revenue from New Jersey customers, and provided reports of this revenue in response to their jurisdictional discovery requests. As set forth above, the number of New Jersey users who conducted searches represented 1.5816 percent of IWS' total users, and the portion of revenue associated with those searches represented 2.669 percent of IWS' total gross revenue. *See* Exhibit A at 130:3-131:16.

Plaintiffs claim that the portion of revenue is irrelevant, relying on *Food Sci. Corp. v. Nagler*, 2010 WL 1186203, at *3 (D.N.J. Mar. 22, 2010). *See* Opposition at p. 35, n. 9. In that case, however, the Court held that the exercise of jurisdiction was appropriate because the defendant "operated a website designed to solicit purchases from anywhere in the United States, and created a business structure to fill those orders. When the structure he set up made repeated sales to New Jersey, he should reasonably have expected that he could be haled into Court in New Jersey, and yet continued processing orders from New Jersey anyway." 2010 WL 1186203, at *4. However, one of the distinguishing factors was that the defendant actually shipped his orders to New Jersey and the claims in the suit arose out of an order shipped there. *Id.* Such is not the case here, where IWS does operates a people search site that is available to individuals across the country and there is no targeting,

7

much less "deliberate targeting" of New Jersey whatsoever, as discussed at length above.[4]

In sum, the record before the Court establishes that personal jurisdiction under the traditional purposeful availment test over IWS is improper, as there is no evidence of New Jersey-specific contracts, advertisements, or any appeals to New Jersey residents. As such, IWS' Motion should be granted.

## B. Plaintiffs Fail to Demonstrate A Basis for Specific Jurisdiction Under the *Calder* Effects Test

Plaintiffs equally fail to establish a basis for specific jurisdiction under the *Calder* effects test. The *Calder* effects test is an alternative basis for personal jurisdiction in cases involving intentional torts. It "requires a plaintiff to plead facts establishing that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum; and (3) the defendant expressly aimed his tortious conduct at the forum." *Hasson*, 114 F.4th at 187 (citing *Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001)). "The effects test prevents a defendant from being haled into a jurisdiction . . . if the defendant did not expressly aim *its conduct* at the state." *Id.* at 191 (citing *Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007)). Here, Plaintiffs argument fails because: (1) Daniel's Law is not an intentional tort, such

---

[4] Elsewhere in their Opposition, Plaintiffs seek to analogize this case to *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025). *See* Opposition at p. 37. That case, however, is inapposite for the reasons discussed *infra.*

that the *Calder* effects test does not apply; and (2) even if the *Calder* effects test

applied, Plaintiffs fail to establish that IWS "expressly aimed" any alleged tortious

conduct at New Jersey.

i.    **Daniel's Law is Not an Intentional Tort**

Because IWS is not subject to specific personal jurisdiction based on the

traditional purposeful availment test, Plaintiffs are trying to transform a purported

negligence case into an intentional tort case, so they can argue the *Calder* effects test

applies.  But this is contrary to how Plaintiffs pled their claim against IWS and how

the Court previously interpreted Daniel's Law.  *See Atlas Data Priv. Corp. v. We*

*Inform, LLC*, 758 F. Sup. 3d 322, 340-41 (D.N.J. 2024) (Daniel's Law "must be read"

to impose a negligence standard to avoid "absurd results" and "constitutional

repugnancy.").[5]

Daniel's Law is not a "tort," much less an "intentional tort."  *See* Black's Law

Dictionary, *Intentional Tort* (12th ed. 2024) (an intentional tort is "[a] tort committed

by someone acting with general or specific intent.   Examples include battery,

false imprisonment").   Plaintiffs' theory is belied by established New Jersey

precedent and common sense.  Under New Jersey law, an intentional tort requires

---

[5] Plaintiffs claim that the New Jersey Superior Court, on a motion to compel jurisdictional discovery, applied the *Calder* effects test and found that Daniel's Law requires intent.  *See* Opposition at p. 2.  However, this decision is not binding on this Court, and the Court should not be persuaded by this decision as it is inconsistent with Plaintiffs' own prior statements and prior findings made and conclusions reached by the Court.

intent to harm, *i.e.*, "knowingly or purposefully engaging in conduct 'substantially certain' to result in injury to another." *See Blazovic v. Andrich*, 124 N.J. 90, 107 (1991) (quoting *Restatement (Second) of Torts* § 8A comment b (1965)). Plaintiffs try to transform a violation of Daniel's Law into an intentional tort by arguing that "Daniel's Law permits liability where the inclusion of protected information results from negligence, but the tort remains intentional because the act of disclosure itself is deliberate." *See* Opposition at p. 6. Plaintiffs argue that a violation of Daniel's Law is an intentional tort simply because a defendant allegedly published information it was legally permitted to publish before any takedown request was submitted. This purported definition of "intentional tort" is in clear contravention of established New Jersey precedent. *See Blazovic*, 124 N.J. at 107.

Plaintiffs' Complaint does not identify any "intentional" wrongdoing, nor does it mention the "effects test" at all. Indeed, the Complaint does not even once use the words "intentional" or "intentionally," and there is no allegation that IWS intended to violate Daniel's Law, intended to harm anyone, or intentionally disclosed someone's information knowing that they were substantially certain to be harmed—nor could it. As such, Plaintiffs' reliance on the "effects test" should be rejected. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (under the "effects test," explaining that "[t]he proper question is not where the plaintiff experienced a particular injury or effect but *whether the defendant's conduct connects him to the*

10

*forum* in a meaningful way") (emphasis added); *Rockwood Select Asset Fund XI v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014) ("*Walden* teaches that personal jurisdiction cannot be based on interaction with a plaintiff known to bear a strong connection to the forum state.").

Plaintiffs hang their claim on the New Jersey Supreme Court's findings in *Monturi v. Englewood Hosp*., which stated that "[n]o 'malice' or intent to injure … is required to establish battery." 246 N.J. Super. 547, 552 (App. Div. 1991). However, the *Monturi* court made clear that "ghost surgery" battery is intentional because it involves a wrongful act (operating without the patient's consent), not merely because the doctor intentionally performed surgery. *Id.* at 552 (quoting *Perna v. Pirozzi*, 92 N.J. 446, 457 (1983)). Plaintiffs here, by contrast, argue that a violation of Daniel's Law is an intentional tort simply because a hypothetical act of disclosure was intentional, even if it was done prior to a takedown request or without any knowledge that a takedown request was made. That theory would erase any distinction between negligence and intentional torts, contradicting New Jersey law and common sense.[6] Because the *Calder* effects test does not apply here, any attempt to establish personal jurisdiction predicated on same must fail.

---

[6] Negligence commonly involves intentional conduct such as deciding to operate a motor vehicle, but that does not transform a negligence claim into an intentional tort. If it did, every motor vehicle negligence case would qualify as an intentional tort simply because driving is a voluntary act, and therefore every negligence claim could invoke the *Calder* effects test.

### ii.    Plaintiffs Fail To Establish That IWS "Expressly Aimed" Any Alleged Tortious Conduct at New Jersey

Even if the *Calder* effects test somehow applied in this case, Plaintiffs have provided no evidence that IWS expressly aimed its tortious conduct at New Jersey. Failure to establish express aiming of tortious conduct is a complete bar to jurisdiction under the *Calder* test. *Hasson*, 114 F.4th at 187. Here, Plaintiffs have failed to plead or prove any expressly aimed conduct by IWS, and certainly no expressly aimed *tortious* conduct. Plaintiffs state that "[IWS] disclos[ed] or continu[ed] to disclose protected information that they knew concerned New Jersey residents," Opposition at p. 17, as evidence of expressly aimed conduct. However, as explained *supra*, IWS maintains contact information of individuals on a nationwide basis, and "general efforts to target a U.S. market do not suffice to demonstrate deliberate targeting of New Jersey in particular." *Rickman*, 538 F. Supp. 3d at 439.

Even assuming such conduct is expressly aimed at New Jersey, merely collecting or disclosing publicly available data is not *tortious* conduct and therefore does not provide personal jurisdiction under the *Calder* effects test. A defendant's mere "knowledge" that a plaintiff in the forum might be harmed does not show that its actions "expressly targeted" the forum for purposes of the "effects test," or any other prerequisite to establishing personal jurisdiction. *Hasson*, 114 F.4th at 196 (3d Cir. 2024) ("We have **rejected the argument that the 'expressly aiming'**

12

**requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state**." (emphasis added)) (internal quotations omitted); *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 411 n.9 (1984) (to establish specific jurisdiction, plaintiff must show the action is "arising out of or related to the defendant's contacts with the forum"); *Wolstenholme v. Bartels*, 511 F. App'x 215, 219 (3d Cir. 2013) (quoting *Marten*, 499 F.3d at 297 ("the effects test prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state.").

Plaintiffs conflate this case's circumstance with instances cases where the defendants intentionally disseminated *harmful* information about forum residents with the conduct at issue. In *Goldfarb v. Kalodimos*, 539 F. Supp. 3d, 435, 453-54 (E.D. Pa. 2021), *Johnson v. Griffin*, 85 F.4th 429, 433 (6th Cir. 2023) and *Calder v. Jones*, 465 U.S. 783, 784-85 (1984), the out-of-state defendants were alleged to have intentionally disseminated harmful information regarding the in-state plaintiff. Here, by contrast, Plaintiffs' only accusation of allegedly tortious conduct is their allegation that IWS is liable for allegedly failing to remove information within ten (10) days of a Daniel's Law request. Because Plaintiffs have admitted that such

13

conduct need not be intentional to constitute a violation of Daniel's Law, such conduct cannot satisfy the express aiming prong of the *Calder* effects test.

To find "express aiming" in this case, Plaintiffs claim that IWS "knowingly tracked and analyzed user activity by state, ran reports specific to New Jersey ZIP codes, and confirmed hundreds of active New Jersey users over a defined period." *See* Opposition at pp. 39-40.  This is a gross misstatement of the facts elicited through IWS' corporate witness' deposition.  As set forth above, IWS analyzed user searches conducted by customers located in New Jersey and gross revenue associated with those services *for purposes of responding to Plaintiffs' jurisdictional discovery in this matter*—not for any other purpose.  *See* Exhibit A at 41:22-47:25, 111:5-113:6, 130:3-131:16.  Stated differently, IWS would not have analyzed this activity but for Plaintiffs' claims herein.  Participating in jurisdictional discovery in this action while its motion to dismiss for lack of personal jurisdiction is pending does not constitute "expressly aiming" any conduct at New Jersey.

Similarly, Plaintiffs claim that IWS marketed its services nationwide, affirmatively created and published New Jersey-specific content, and derived revenue from New Jersey residents.  Plaintiffs, once again, fail to comprehend and misstate IWS' corporate witness' deposition testimony.  IWS does not specifically target its advertisement(s) and/or marketing to any particular audience, including New Jersey residents.  *See* Exhibit A at 73:17-74:7, 110:21-111:4.  The "content"

14

referred to by Plaintiffs is an article ran by IWS for *every* U.S. state regarding scam trends and fraud—this content was not specific to New Jersey. *Id.* at 100:7-110:24. Lastly, for the reasons set forth above, the fact that 2.669 percent of IWS' total 2024 gross revenue originated from users with a zip code in New Jersey (*id.* at 130:3-131:16) does nothing to demonstrate the facts necessary to confer specific jurisdiction under the *Calder* effects test or otherwise. *Nagler*, 2010 WL 1186203, at \*4. Despite Plaintiffs' self-serving—and palpably incorrect—statements throughout their Opposition, there are no facts by which this Court could conclude that IWS "expressly aimed" any of its conduct at New Jersey.

Plaintiffs also rely on the Ninth Circuit's ruling on *Briskin*, where the Ninth Circuit treated the *Calder* "express aiming" requirement as satisfied merely because a defendant knew its conduct may affect forum residents. 135 F.4th at 757. However, the *Briskin* rule directly contradicts this Circuit's holding in *Hasson* that such knowledge is necessary but not sufficient to establish specific jurisdiction under the *Calder* effects test. 114 F.4th at 196. In the wake of *Hasson*, several district courts have applied the effects test in circumstances relevant here. *See Click Go and Buy Inc. v. IT Assets, Inc.*, 2024 WL 5252474, at \*8 (D.N.J. Dec. 31, 2024) (a defendant is not subject to personal jurisdiction in the plaintiff's home state "as soon as the defendant learns what that state is."; "[t]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff

is located there is insufficient to satisfy *Calder*."); *Rhodes v. Azeff*, 2025 WL 327297,

at *5 (W.D. Pa. Jan. 29, 2025) ("the mere posting of allegedly defamatory statements

online will not suffice, as explained in *Hasson*.") (quotations omitted); *Ingrao v.

AddShoppers, Inc.*, 2024 WL 4892514, at *10 (E.D. Pa. Nov. 25, 2024) (software

company does not expressly target Pennsylvania "simply by providing code for" a

website accessible in the forum).

In *Hasson*, the Third Circuit found that "jurisdiction over an out-of-state

intentional tortfeasor must be based on intentional conduct by the defendant that

creates the necessary contacts with the forum," not on "the unilateral activity of a

plaintiff." 114 F.4th at 196 (quoting *Walden*, 571 U.S. at 286).  For the reasons

outlined above, Plaintiffs' allegations fail to meet this test, and the conduct is going

in the wrong direction.  It is not that IWS directed some action at or into New Jersey,

but that Plaintiffs directed their action from New Jersey to a resident of another state.

Plaintiffs' very theory in the exact same context has been rejected by New Jersey's

Appellate Division.  *See Atlas Data Privacy Corp. v. LexisNexis Risk*, BER-L-

000875-24 (Law Div. June 6, 2025) ("the allegations that the unlawful actions

occurred in New Jersey are based on the unilateral activities of the Plaintiffs")

(emphasis added); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475

(1985) ("a defendant will not be haled into a jurisdiction solely as a result of . . .

unilateral activity of another party").

16

The facts here demonstrate, even more so than in *Hasson*, that the *Calder* effects test would not allow for this Court to hold personal jurisdiction over IWS. Any relevant conduct originated only because Plaintiffs contacted IWS out of New Jersey and not because IWS directed any tortious activity toward the forum. Plaintiffs rely on non-binding authority that conflicts with controlling Third Circuit precedent and cannot support their claim for personal jurisdiction. As such, even assuming that the *Calder* effects test applied, Plaintiffs have failed to demonstrate that IWS "expressly aimed" any alleged tortious conduct at New Jersey, and cannot establish a basis for this Court to exercise personal jurisdiction over IWS.

## **<u>CONCLUSION</u>**

There is no evidence that IWS purposefully availed itself of New Jersey, and the *Calder* effects test does not apply because allegedly violating Daniel's Law is not an intentional tort. And, even if *Calder* did apply, Plaintiffs have shown no expressly aimed tortious conduct. Accordingly, for these reasons and those set forth more fully in the Motion, the Court should grant the instant Motion and dismiss Plaintiffs' claims against IWS for lack of personal jurisdiction, together with such other and further relief as this Honorable Court deems just, proper and equitable.

Dated: March 2, 2026

Respectfully Submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Clair E. Wischusen*

Clair E. Wischusen
John T. Mills (*pro hac vice*)
290 W. Mt. Pleasant Avenue, Suite 3310
Livingston, New Jersey 07039
Tel: (973) 549-2500
Fax: (973) 377-1911
Email: cwischusen@grsm.com
Email: jtmills@grsm.com

*Attorneys for Defendant Innovative Web Solutions, LLC*

18